**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

———————————

WILLIAM A. GOLDSBOROUGH,

      Plaintiff,

      v.                                       No. 2:19-cv-00309 KWR/GBW

NEWPARK DRILLING FLUIDS, LLC,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendant's Motion to Compel Arbitration, filed on August 26, 2019 (**Doc. 12**). Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendant's Motion is well-taken and, therefore, is **GRANTED**.

## BACKGROUND

This is a putative class action. Plaintiff signed an independent contractor agreement with Upstream Fluid Consultants, LLC, to perform services at Defendant's wellsite. Plaintiff now alleges that Defendant violated the New Mexico Minimum Wage Act by failing to pay him and other mud engineers overtime. Plaintiff alleges that Defendant improperly classified him and other mud engineers as independent contractors rather than employees.

On November 30, 2016, Plaintiff signed an Independent contractor Agreement with Upstream. (the "Goldsborough Agreement"). The Goldsborough Agreement is an "Independent Contractor Agreement … entered into between Upstream Fluid Consultants, LLC (Upstream) and William Goldsborough." **Doc. 12-2, p. 1.** The Goldsborough Agreement provides that "Upstream engages Contractor to perform an assignment on a project for an Upstream client…" *Id.*

Plaintiff agreed to arbitrate any "claims for wages or other compensation due" that he may have against Upstream's clients. **Doc. 12-2, ¶ 12.** Defendant asserts that during the relevant time period it was a client of Upstream. **Doc. 12-1, ¶ 5.** Plaintiff did not rebut this assertion.

The Goldsborough Agreement also provided:

- Plaintiff agreed that he was being engaged as a contractor to perform "an assignment on a project for an upstream client." **Doc. 12-2 at ¶ 1.**
- Plaintiff agreed to comply with all policies of the Upstream client. *Id.* at ¶ **6.**
- Upstream agreed to cover Plaintiff with $1 million in general liability insurance and agreed to indemnify Plaintiff for claims made against him by Upstream's clients. *Id* at ¶ **7, 8**
- Plaintiff agreed to keep confidential any non-public information he received while working for the client or the client's contractors. *Id.* at ¶ **9**
- Plaintiff agreed to perform to the best of his ability while on client's wellsite. *Id.* at ¶ **11.**

On August 26, 2019, Defendant filed this Motion to Compel arbitration and dismiss proceedings. **Doc. 12.**

## DISCUSSION

Defendant seeks to enforce the Goldsborough Agreement arbitration clause against Plaintiff. At issue is whether Defendant, a non-signatory to that contract, can enforce the arbitration clause under the theories of (1) third-party beneficiary and (2) equitable estoppel.

**I.     Federal Arbitration Act.**

The Federal Arbitration Act permits a party to move to compel arbitration when an opposing party refuses to arbitrate issues covered by a valid arbitration agreement. 9 U.S.C. § 4. The party seeking to compel arbitration must establish that (1) there is a valid arbitration clause and (2) the claims in dispute fall within that agreement's scope. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732 (Tex. 2005); *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 519 (Tex. 2015). Plaintiff does not appear to dispute that the claims fall within the agreement's

scope. Rather, Plaintiff argues that there is not a valid agreement to arbitrate between Plaintiff and Defendant.

"Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate. Because arbitration is contractual in nature, the FAA generally does not require parties to arbitrate when they have not agreed to do so." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005) (citations and quotation marks omitted). Texas law determines whether there is a valid agreement to arbitrate. *Arthur Andersen LLP, v. Carlisle*, 556 U.S. 624 (2009).

However, a non-signatory may compel arbitration according to a contractual arbitration clause when principles of contract law or agency would bind a non-signatory to a contract in general. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 738. Arbitration involving a non-signatory may be required under the following theories: (1) incorporation by reference; (2) assumption, (3) agency, (4) veil piercing/alter ego, (5) estoppel, and (6) third-party beneficiary. *Id.*

## II.     Third Party Beneficiary.

Although it did not sign the Goldsborough Agreement, Defendant argues that it may compel arbitration against Plaintiff under the third-party beneficiary theory. The Court agrees.

### A.     Relevant Law

The Court looks to state contract law to determine whether "a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate." *Arthur Andersen LLP, v. Carlisle*, 556 U.S. 624 (2009). The parties agree that Texas law applies. *See* **Doc. 12 at 8-9; Doc. 15 at 3; Doc. 20 at 6; Doc. 22.**

Generally, "there is a presumption against conferring third party beneficiary status on noncontracting parties." *S. Tex. Water Auth. v. Lomas,* 223 S.W.3d 304, 306 (Tex. 2007). However, "an entity that is not a party to a contract may nevertheless enforce the contract as a third-party beneficiary if it establishes that (1) the parties to the contract intended to secure a benefit to it and (2) entered into the contract directly for its benefit." *ConocoPhillips Co. v. Graham*, No. 01-11-00503-CV, 2012 WL 1059084, at *6 (Tex. App. Mar. 29, 2012), *citing In re Palm Harbor Homes,* 195 S.W.3d at 677; *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 635 (Tex. 2018) (citations and quotation marks omitted) ("arbitration agreements may also be enforced by third-party beneficiaries, so long as the parties to the contract intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit."). Stated another way, "[a] third-party beneficiary may enforce a contract to which it is not a party if the parties to the contract intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006).

"While the contract need not have been executed solely for the benefit of the third-party, the benefit to the third-party must be more than merely incidental to the contract. In determining whether the parties intended to benefit a third-party, courts look to the entire agreement, giving effect to all of its provisions." *ConocoPhillips,* 2012 WL 1059084, at *6; *In re Citgo Petroleum Corp.*, 248 S.W.3d 769, 776 (Tex. App.—Beaumont 2008, pet. denied). "The benefit must be more than incidental, and the contracting parties' intent to confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied." *Jody James*, 547 S.W.3d at 635. (quotation marks and citations omitted).

**B.      Analysis.**

Reading the Goldsborough Agreement as a whole, the Court concludes that Plaintiff and Upstream intended to directly benefit Defendant and provide Defendant the right to enforce the arbitration agreement.  The purpose of the Goldsborough Agreement was to engage Plaintiff to perform an assignment on a project for an Upstream client – in this case, Defendant.  In other words, the Goldsborough Agreement appears to govern the relationship between Plaintiff and Defendant.  The agreement provides that Plaintiff's pay and expense reimbursement were to be negotiated between Upstream and Plaintiff and paid by Upstream.  **Doc. 12-2 at ¶¶ 2, 5.**  It also provided that Upstream would pay Plaintiff for his work at a client's wellsite.  *Id.*  Moreover, the agreement required that Plaintiff (1) agree that he is an independent contractor while working on the client's project or at the client's wellsite, (2) comply with all the client's policies, (3) keep confidential any of the client's non-public information,  (4) perform to the best of his abilities on client's wellsite, (5) comply with safety regulations on the job; and (6) **agree to arbitrate claims against Upstream and its client**.  **Doc. 12-2.**  Plaintiff and Upstream entered into these provisions directly for the benefit of Defendant.  *Berryman v. Newalta Envtl. Servs., Inc.*, No. CV 18-793, 2018 WL 5723290, at *6 (W.D. Pa. Nov. 1, 2018) (in FLSA case, applying Texas law, concluding "the parties clearly intended a direct benefit for Smith Management's company clients—i.e., resolving disputes through arbitration.").

Moreover, Upstream agreed to insure Plaintiff and indemnify Plaintiff for claims by the client.  **Doc. 12-2, ¶¶ 7, 8.**  Since a judgment against an individual mud engineer is likely to be uncollectible, this provision also directly benefits Defendant, as it provides an avenue for collection.  In exchange for these indemnity and insurance provisions, the parties likely intended that any claims by the client would also be subject to arbitration.

Thus, Upstream intended to benefit its clients by providing coverage for the actions of Plaintiff and also protect the clients from costly litigation by providing arbitration of any claims with Plaintiff. Since Upstream would likely pay a judgment Defendant obtained against Plaintiff, Upstream likely intended to grant Defendant the right to enforce the arbitration agreement against Plaintiff. *See, e.g., In re Citgo Petroleum Corp.*, 248 S.W.3d 769, 777 (Tex. App. 2008).

Viewed in light of these insurance and indemnity provisions, Plaintiff and Upstream's arbitration clause would likely be rendered meaningless if claims between Plaintiff and Defendant did not go to arbitration. *ConocoPhillips Co. v. Graham*, No. 01-11-00503-CV, 2012 WL 1059084, at *7 (Tex. App. Mar. 29, 2012) ("[client's] right to enforce the arbitration agreements is necessary to effectuate one of JVIC's apparent intended purposes in entering into the agreement: arbitration of not only the employee's claims against JVIC but also the employee's claims against JVIC's clients, whom JVIC has, at least in some cases, agreed to indemnify and defend in such matters."), *citing Citgo,* 248 S.W.3d at 777.

Therefore, reading these provisions together as a whole, the Court concludes that (1) the agreement expressly granted Defendant the benefit of arbitration and (2) the agreement was intended to directly benefit Defendant. *ConocoPhillips Co. v. Graham*, No. 01-11-00503-CV, 2012 WL 1059084, at *7 (Tex. App. Mar. 29, 2012) ("In light of the contracts' express contemplation of an arbitration obligation in disputes to which [the employer] is not a party ..., the benefit conferred on ConocoPhillips—the right to enforce [the employer's] arbitration agreements when sued by [its] employees—is not merely incidental."); *In re Citgo Petroleum Corp.*, 248 S.W.3d 769, 777 (Tex. App. 2008) ("Citgo was an intended third-party beneficiary of the dispute resolution agreement because "[a]lthough the contract does not name Citgo specifically, the agreement is sufficiently clear to establish that the parties intended to cover [customers and clients]

and the record establishes Citgo is a customer or client."); *see also Brian German v. Haliburton Company*, 4:18-cv-00100, Doc. 34, (S.D. Tex. March 20, 2019) (in FLSA case, under similar factual allegations as this case, Upstream and the plaintiff intended to benefit defendant well-site operator, Haliburton), *citing Berryman v. Newalta Environmental Services, Inc.*, Civ. A. No. 19-793, 2018 WL 5723290, *8 (W.D. Pa. Nov. 1. 2018) (in FLSA case, applying Texas law, court concluded that client of staffing company was intended third-party beneficiary of contract between staffing company and its employees).

Plaintiff argues that Defendant cannot be a third-party beneficiary because it was not named in the contract, and it is otherwise unclear who is included in the definition of "client" in the agreement. The Court disagrees. Texas law does not require third-party beneficiaries to be identified by name. *ConocoPhillips Co. v. Graham*, No. 01-11-00503-CV, 2012 WL 1059084, at *6 (Tex. App. Mar. 29, 2012) ("a third-party beneficiary may be identified in the agreement by class or category of persons, all of whom may not be known to the contracting parties at the time of execution."); *In re Citgo*, 248 S.W.3d. 773, 776 ("[a]lthough the contract does not name Citgo specifically, the agreement is sufficiently clear to establish that the parties intended to cover [customers and clients] and the record establishes Citgo is a customer or client."), *cited in Allen v. W&T Offshore, Inc.*, 2019 WL 2996695 (S.D. Tex. 2019). Rather, the question of "[w]ho is actually bound by an arbitration agreement is… a function of the intent of the parties, as expressed in the terms of the agreement." *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011).

Here, reading the agreement as a whole, the term "client" used in the arbitration clause is unambiguous. The purpose of the Independent Contractor agreement was to engage Plaintiff "to perform an assignment on a project for an Upstream client." **Doc. 12-2 at ¶ 1.** The arbitration clause unambiguously grants *the client for whom Plaintiff provided services* the right to arbitrate.

It is undisputed that Defendant was a client of Upstream as contemplated in the agreement, and that Plaintiff worked at Defendant's wellsite. Therefore, the Court concludes that Defendant was clearly and unmistakably identified in the contract.

## III.  Equitable Estoppel.

Alternatively, the Court concludes that direct-benefits estoppel compels arbitration in this case. "This estoppel theory precludes a plaintiff from seeking to hold the non-signatory liable based on the terms of an agreement that contains an arbitration provision while simultaneously asserting the provision lacks force because the defendant is a non-signatory." *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 637 (Tex. 2018).

> Simply put, a person cannot both have his contract and defeat it too. When a claim depends on the contract's existence and cannot stand independently—that is, the alleged liability arises solely from the contract or must be determined by reference to it—equity prevents a person from avoiding the arbitration clause that was part of that agreement. But when the substance of the claim arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law, direct-benefits estoppel is not implicated even if the claim refers to or relates to the contract or would not have arisen but for the contract's existence.

*Id.*, 547 S.W.3d at 637 (internal citations and quotation marks omitted). However, "a party who "attempts to enforce rights that would not exist without [an agreement] manifests her assent to the [agreement]'s arbitration clause." *Rachal v. Reitz*, 403 S.W.3d 840, 847-48 (Tex. 2013).

Here, Plaintiff is clearly seeking the benefits of the Goldsborough Agreement. As explained above, the Goldsborough Agreement is the basis for his work as a Mud Engineer at Defendant's wellsite, and is the main document governing the relationship between Plaintiff and Upstream and Plaintiff and Defendant. Plaintiff claims that Defendant failed to properly pay him under the New Mexico Minimum Wage Act. However, Plaintiff signed an agreement stating that he was performing services for Defendant as an independent contractor for Upstream. Given that the agreement provides that Plaintiff was an independent contractor of Upstream and that

Upstream would pay Plaintiff for his services, **Doc. 12-2 at ¶¶ 2, 4, 5, and 11,** the Court concludes

that any analysis of the NMMWA claims against Defendant would be based on the agreements.

*See, e.g., Randle v. Metro. Transit Auth. of Harris Cty*., No. CV H-18-1770, 2018 WL 4701567,

at \*10 (S.D. Tex. Oct. 1, 2018) (in FLSA case, non-signatory could enforce arbitration clause in

Plaintiff's employment agreement with third-party, because "FLSA claim must invariably rely on

any employment agreements that exist.").

Plaintiff cites to two Texas Supreme Court cases, *Jody James Farms, JV v. Altman Grp.,

Inc.*, 547 S.W.3d 624, 637 (Tex. 2018) and *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458

S.W.3d 502, 528 (Tex. 2015).  While they state the controlling law, they are factually inapposite.

Neither of these cases involved wage or FLSA statutes, or the specific contractual relationship

present in this case. For example, in *G.T. Leach Builders,* Plaintiff sued Defendants on contracts

they did sign, therefore the Defendants could not enforce arbitration clause in *other* contracts they

did not sign.  458 S.W.3d 502.  Here, Plaintiff has not alleged there was any other contract between

Plaintiff and Defendant.

**IV.    Case will be Dismissed**.

Defendant requested that this case be dismissed rather than stayed.  Plaintiff did not address

whether the case should be stayed or dismissed.  Because the only claim in this case is subject to

arbitration, the Court concludes that dismissal is appropriate.  *See BOSC, Inc. v. Bd. of Cty.

Commissioners of Cty. of Bernalillo*, No. CV 15-1042 KG/LF, 2016 WL 7428796, at \*4 (D.N.M.

Feb. 25, 2016), *aff'd*, 853 F.3d 1165 (10th Cir. 2017) (dismissing action with prejudice as court

granted motion to compel arbitration); *see also SS White Burs, Inc. v. Guidance Endodontics, LLC*,

789 F. App'x 714, 720 (10th Cir. 2019) (affirming dismissal).

## V.    Conclusion.

For the reasons stated above, Defendant's Motion to Compel Arbitration is **GRANTED.**

Plaintiff's claim is hereby **DISMISSED.**

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE